UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


MARYLAND CASUALTY COMPANY                    PLAINTIFF/COUNTERDEFENDANT

VS.                                CIVIL ACTION NO. 4:06CV59TSL-JMR

LAB DISCOUNT DRUG, INC., ET AL.      DEFENDANTS/COUNTERPLAINTIFFS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff
Maryland Casualty Company for summary judgment pursuant to Rule 56
of the Federal Rules of Civil Procedure.  Defendants Lab Discount
Drug, Warren E. Hutto and Patricia Hutto, and defendants Larry
Stanley and Barbara Stanley, have separately responded in
opposition to the motion and the court, having considered the
memoranda of authorities, together with attachments, submitted by
the parties, concludes that plaintiff's motion is well taken and
should be granted.

This case presents an insurance coverage dispute.  In 2005,
three female plaintiffs filed lawsuits in the Circuit Court of
Wayne County, Mississippi, alleging that Warren Hutto sexually
molested them.[1]  Each of the plaintiffs filed two separate suits,

_____

[1]   One plaintiff, a minor identified as K.W., alleged that
at a family gathering on May 26, 2004, Hutto, her uncle,
"physically rubbed the Plaintiff's body and kissed her for the
purposes of indulging his lust. . . ."  Bonnie Mary Riles, now an
adult, alleged that in 1982, at a time when she was around 7 or 8
yeas old, she was a business invitee at Lab Discount Drug, Inc.

for a total of six suits.  Each sued Lab Discount Drug, Inc. and

Warren Hutto, individually and as an agent of Lab Discount Drug,

Inc., and each also filed a separate suit naming Lab Discount

Drug, Inc., Stanley Drugs, Inc., Patricia Hutto, individually and

as an agent and director of Lab Discount Drug, Inc., Barbara

Stanley, individually and as an agent and director of Stanley

Discount Drugs, Inc., and Larry Stanley, individually and as an

agent and director of both Lab Discount Drug, Inc. and Stanley

Discount Drugs, Inc.[2]  In general, the plaintiffs alleged that

Hutto was liable for molesting them, and that the remaining

defendants, all business affiliates of Warren Hutto's in one way

---

and was subjected by Warren Hutto to "repeated acts of depraved
sexual conduct by rubbing the Plaintiff's breasts and forcing
[her] hand to rub his genitals," and she alleged that "as recently
as 18 months ago the Defendant rubbed the Plaintiff's back while
demanding sexual favors in a profane manner."  Christal Webb
Blackwell alleged that in April 1989, when she was around 12 or 13
years old and employed at Lab Discount Drug and also performing
babysitting for the defendants, Warren Hutto subjected her "to
repeated acts of depraved sexual conduct by rubbing the
Plaintiff's breast and vagina."

[2]     The suits are as follows:
K.W. v. Warren F. Hutto, et al, Civil Action No. CV-2005-181-B;
K.W. v. Patricia Hutto, et al, Civil Action No. CV-22005-182-B;
Bonnie Mary Riles v. Warren E. Hutto, et al, Civil Action No.
    CV-2005-160-B;
Bonnie Mary Riles v. Patricia Hutto, et al, Civil Action No.
    CV-22005-161-B;
Christal Webb Blackwell v. Warren F. Hutto, et al, Civil Action
    No. CV-2005-158-R; and
Christal Webb Blackwell v. Patricia Hutto, et al, Civil Action No.
    CV-22005-159-R.

or another, were liable for failing to prevent or put a stop to, and for having concealed Warren Hutto's sexual molestation of young girls.[3]

Maryland Casualty, as Lab Discount Drug's liability insurance carrier, was called upon to defend all of the defendants in the underlying actions. Maryland Casualty denied coverage, and on April 26, 2006, filed the present declaratory judgment action seeking an adjudication that it has no duty to defend or indemnify defendants herein under its policy for claims made against these defendants in the underlying suits. Maryland Casualty has now moved for summary judgment, contending that none of the claims against any of the defendants in the underlying actions is even arguably covered by the subject policy and that it is entitled to a declaratory judgment to that effect.[4]

---

[3]     The relationships among the various defendants, including the particulars of the relationships of the individual defendants to the corporate defendants, are not known to the court. The court is informed only that Warren and Patricia Hutto and Larry Stanley are officers and agents of Lab Discount Drug, and that Larry and Barbara Stanley are officers of Stanley Discount Drugs, though the nature of the relationship, if any, between Stanley Discount Drugs and Lab Discount Drug, or the Huttos and Stanley Discount Drugs, is not known.

[4]     The court notes at the outset that Stanley Discount Drugs has not responded to the motion. In the motion, Maryland Casualty argues that Stanley Discount is not an insured under its policy; it is not a named insured, nor is it an executive director or officer of Lab Discount, the sole named insured, nor is it an employee of Lab Discount. There seems to be no basis for finding Stanley Discount to be an insured, and the fact that Stanley Discount has not responded to the motion for summary judgment would seem an acknowledgment that the policy provides no coverage

"'Mississippi has adopted the 'allegations of the complaint' rule . . . to determine whether an insurer has a duty to defend,'" pursuant to which the court reviews the allegations in the underlying complaint to see whether it states a claim that is within or arguably within the scope of the coverage provided by the insurance policy.  Acceptance Ins. Co. v. Powe Timber Co., Inc., 403 F. Supp. 2d 552, 554 (S.D. Miss. 2005) (quoting Ingalls Shipbuilding v. Federal Ins. Co., 410 F.3d 214, 225 (5th Cir. 2005)).  "In so doing, the court compares the words of the complaint with the words of the policy, looking 'not to the particular legal theories' pursued by the plaintiffs, 'but to the allegedly tortious conduct underlying' the suit."  Id. (citing Ingalls Shipbuilding).  See also United States Fidelity & Guarn. Co. v. Omnibank, 812 So. 2d 196, 200 (Miss. 2002).  If the complaint alleges facts which are arguably within the policy's coverage, a duty to defend arises.  Id.  See also Pulmonary Advisory Servs. v. Aetna Life and Cas. Co.  WL 261873, 1-2 (5th Cir. 2003) (insurers are "'justified in refusing to defend only if it is clear from the face of the . . . complaint[] that the allegations therein are not covered'") (citations omitted).

Maryland Casualty provided coverage to Lab Discount Drug pursuant to commercial general liability policy with coverage commencing March 24, 2005 and continuing through March 24, 2006.

---

for this defendant.

The policy coverage is divided into two parts.  Coverage A insures against "bodily injury" and "property damage" liability caused by an "occurrence," which is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  This part does not provide coverage for bodily injury or property damage that is "expected or intended from the standpoint of the insured."  Under well established Mississippi law, intentional acts do not constitute an "occurrence" under policies which define "occurrence" as an accident.  As this court explained in Acceptance Insurance Co. v. Powe Timber Co.,

> According to Mississippi law, there is no "occurrence" under policies which define "occurrence" as an "accident" if the harm for which recovery is sought from the insured resulted from an insured's intentional or deliberate actions, even if the insured did not intend such harm.  It is further settled under Mississippi law that an insurer's duty to defend under a general commercial liability policy for injuries caused by accidents does not extend "to injuries unintended by the insured but which resulted from intentional actions of the insured" even if those actions were not intentionally tortious but rather only negligent.  If the acts themselves were not accidental, even if they may have been negligent, then there is no "occurrence."

403 F. Supp. 2d 552, 555 (S.D. Miss. 2005).

Among other reasons, Maryland Casualty maintains that Coverage A does not extend to the claims in the underlying actions because all the claims, regardless of how characterized, stem from allegations of intentional, i.e., not accidental, sexual

misconduct by Warren Hutto and therefore do not involve a covered occurrence.

In response to Maryland Casualty's motion, the Hutto defendants do not deny that the underlying complaints allege intentional sexual misconduct by Warren Hutto.  They insist, though, that these allegations are untrue, and argue that while an insurer's duty to defend is usually determined by the allegations of the complaint, an exception to that rule applies which obligates an insurer to defend "when presented with extrinsic facts, of which the insurer has knowledge or could obtain knowledge by means of a reasonable investigation, that trigger coverage under the policy."  Powe, 403 F. Supp. 2d at 557 (quoting Ingalls Shipbuilding, 410 F.3d at 225 n.17); see also American States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551 (5th Cir. 1998) (while general rule is that insurer's duty to defend hinges on allegations in complaint, narrow exception imposes duty to defend upon insurer who has knowledge, or could obtain knowledge through reasonable investigation, of existence of facts that trigger coverage).  These defendants submit that the only reason Maryland Casualty never became aware of the true facts is because it never bothered to investigate the allegations in the underlying actions but rather blindly accepted those allegations as a basis for denying coverage.  The Hutto defendants reason that under the circumstances, the court should not limit its review to the

6

allegations of the underlying complaints to determine whether there is coverage, and that they should be given the opportunity to develop the true facts before the court simply accepts Maryland Casualty's "invitation to rush to a result."  The court is not persuaded.

Basically, the Hutto defendants' position in this regard is that Maryland Casualty has a duty to defend because the allegations of the underlying complaints are untrue.[5]  In <u>Powe</u>, this court considered and rejected a similar argument by an insured, explaining that the insured's denial of the underlying plaintiffs' allegations did not give rise to a duty to defend because if the allegations were untrue, then they did not support a viable claim against the insured for liability in causing the underlying plaintiffs' injuries.  "In other words," the court wrote, "such a suit would have no merit, and thus, Powe's version of the facts is little more than a denial of the underlying plaintiffs' allegations and its defense to their lawsuits against it."  402 F. Supp. 2d at 558.  The court went on to explain as follows:

> Notably, in the <u>Mavar Shrimp</u> case, the Mississippi
> Supreme Court held that under the "true facts"
> exception, a duty to defend exists only if the insured
> learns of "true facts," which, "if established, present

------

[5]     They argue that the question of coverage "is much more complex and fact intensive" than a simple review of the complaint would suggest; but this is nothing more than saying they deny the allegations.

potential liability of insured" and a cause of action
based on those facts would be covered by the policy.
187 So. 2d at 875.  See also Tennessee Corp. v. Hartford
Acc. & Indem. Co., 463 F.2d 548, 550-551 (5th Cir. 1972)
(under Georgia law, which recognizes the "true facts"
exception, for a duty to defend to arise, "there must be
a conjunction of two elements: (1) property damage, and
(2) liability therefor on the part of the insured,
revealed either by the allegations of the complaint or
by the required investigation into the true facts
surrounding the claim"); cf. American States Ins. Co. v.
Natchez Steam Laundry, 131 F.3d 551, 553 (5th Cir. 1998)
(holding that an insured cannot trigger the duty to
defend merely by denying the allegations in the
complaint).  In sum, if the unpled "facts" would not
support a claim for liability against the insured, then
knowledge of these facts by the insurer does not give
rise to a duty to defend.  There is thus no duty to
defend here as neither the facts pled, nor the "true"
facts constitute an "occurrence" covered by the policy.

403 F. Supp. 2d at 558-559.

In the case at bar, the Hutto defendants have not pointed to

any facts which, if established, would support a claim for

liability against them, and therefore, they do not fall within the

"true facts" exception.  It follows that there is no need for

discovery as to the "true facts" and that consideration of

Maryland Casualty's summary judgment motion at this time is not

premature.[6]  See Evanston Ins. Co. v. Neshoba County Fair Ass'n,

Inc., 442 F. Supp. 2d 344, 346 n.3 (S.D. Miss. 2006) (finding

there were no disputed issues of fact "material to the

determination of whether the policy provides coverage for

---

[6]     The court does note, too, that the Hutto defendants'
professed need for discovery in response to plaintiff's motion is
at odds with their representation to the court at the case
management conference that no discovery was required in the case.

8

[underlying plaintiff's] claims.  For this reason, its argument that the court cannot decide the coverage issue until there has been more opportunity for discovery is without merit.")

Patricia Hutto, Lab Discount Drug and the Stanleys next argue that even if the policy affords no coverage to Warren Hutto, it does not follow that there is no coverage for the claims asserted against them, particularly since the policy contains a "separation of insureds" clause which provides that the insurance applies "[s]eparately to each insured against whom claim is made or 'suit' is brought."  These defendants reason that the analysis of potential coverage as to them obviously involves different issues than those pertinent to the determination of coverage as to Warren Hutto because, unlike Warren Hutto, they are not alleged to have intentionally sexually molested the underlying plaintiffs.  In this vein, they point out that while the underlying complaints do allege intentional torts against them, those complaints also include numerous allegations of negligence, e.g., negligently failing to prevent the harm, and negligently failing to maintain a reasonably safe business premises; and they argue that since at least as to the negligence claims, there is no allegation that they expected or intended to cause harm to the underlying plaintiffs, these are claims that are potentially covered under the policy.  Their position on this issue is likewise without merit.

9

Similar to the case at bar, American Guaranty and Liability Insurance Co. v. 1906 Co., 129 F.3d 802 (5th Cir. 1997), involved allegations of intentional sexual misconduct by an employee, as well as negligence by his supervisor and employer.  The employer and supervisor conceded that the acts of the employee were intentional and hence were not covered under the employer's policy, but they maintained that from their standpoint, the conduct was neither intended nor expected.  As there were no Mississippi cases on the issue, the Fifth Circuit was called on to predict how the court would rule, and concluded that the Mississippi Supreme Court "would likely follow the lead of neighboring jurisdictions and hold that where negligence claims against an employer, such as negligent hiring, negligent training, and negligent entrustment, are related to and interdependent on the intentional misconduct of an employee, the 'ultimate question' for coverage purposes is whether the employee's intentional misconduct itself falls within the definition of an occurrence." 129 F.3d at 810.[7]

---

[7]    As examples of cases so holding, the court cited Cornhill Insurance PLC. v. Valsamis, Inc., 106 F.3d 80, 87 (5th Cir. 1997) ("[W]here liability premised on negligence is related to and interdependent of other tortious activities, the 'ultimate issue' is whether the tortious activities themselves are encompassed by the 'occurrence' definition."); New York Life Ins. v. Travelers Ins. Co., 92 F.3d 336, 339 (5th Cir. 1996) (excluding claims for negligent hiring, training, and supervision against employer that were "related to" and "interdependent on" claim of fraud by employee because employee's intent is imputed to employer); Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins.

It is true that the underlying complaints charge that these defendants were negligent in various ways.  However, all of the factual allegations against these defendants, whether characterized as negligence or intentional conduct, are grounded on and arise from Hutto's alleged acts of sexual molestation. Accordingly, under applicable Mississippi law, just as the policy does not extend coverage to Warren Hutto, it likewise affords his codefendants no coverage.[8]

_____

Co., 99 F.3d 695, 703 (5th Cir. 1996) ("Where the legal claims asserted by the plaintiffs are not independent and mutually exclusive, but rather related to and dependent upon excluded conduct, the claims are not covered, even if asserted against an insured who did not himself engage in the prohibited conduct."); Old Republic Ins. Co. v. Comprehensive Health Care Assoc., Inc., 786 F. Supp. 629, 632 (N.D. Tex. 1992), aff'd on other grounds, 2 F.3d 105 (5th Cir. 1993) (finding no duty to defend insured against claim of negligent hiring when the claim of negligent hiring arises out of agent's intentional sexual harassment); Columbia Mut. Ins. Co. v. Fiesta Mart, Inc., 987 F.2d 1124, 1128 (5th Cir. 1993) (holding that under Texas law, where liability of insured and liability of its agent were "related and interdependent," court must look to whether agent's fraud was covered by policy); Huey T. Littleton Claims, Inc. v. Employers Reinsurance Corp., 933 F.2d 337, 339 (5th Cir. 1991) (holding that under Louisiana law, dishonest act exclusion in employer's commercial liability policy excluded negligence and vicarious liability claims against employer for losses based upon the excluded conduct of its employee).

[8]     Maryland Casualty has argued additionally that Coverage A affords defendants no coverage because (1) the underlying plaintiffs do not allege "bodily injury," but rather allege only emotional distress, which does not qualify as "bodily injury"; (2) the policy covers only bodily injury which occurs during the policy period and Ms. Riles' and Ms. Blackwell's allegations do not involve bodily injury occurring during the policy period; and (3) Ms. Riles' and Ms. Blackwell's allegations are barred by the policy's "Known Injury or Damage" endorsement which excludes coverage for bodily injury which the insured had notice of an

Coverage B of the policy insures against liability for "personal and advertising injury."  The policy contains at least two relevant exclusions.  First, it excludes coverage for "personal and advertising injury" which is

> [c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal or advertising injury."

It also excludes coverage for "personal and advertising injury"

> [a]rising out of the willful violation of a penal statute or ordinance committed by or at with (sic) the consent of any insured.

Maryland Casualty argues that both exclusions apply here, the former, because if the underlying plaintiffs suffered any "personal and advertising injury," then Warren Hutto, the alleged perpetrator, caused and knew of such injuries, and the latter, because Mr. Hutto's alleged acts of sexual molestation clearly constitute "willful violation of a penal statute," see Miss. Code Ann. § 97-5-23 (making the sexual molestation of a child a felony).[9]  In response to the motion, none of the defendants has

occurrence prior to the policy period.  Given the court's conclusion that the underlying complaints do not involve an covered "occurrence" as to any defendant, the court finds it unnecessary to consider these additional arguments.

[9]    In addition to the applicability of exclusions, Maryland Casualty argues that the underlying claims do not involve "personal and advertising injury," in any event.  That term is defined as "injury, including consequential 'bodily injury', arising out of one or more" specified offenses.  The underlying lawsuits do not appear to include any of the offenses which would

asserted a basis for finding that Coverage B is potentially
applicable.  They have instead focused their arguments exclusively
on the policy's Coverage A for bodily injury.  Notwithstanding
their failure to respond, the court does note that for the reasons
assigned by Maryland Casualty, Coverage B does not provide any of
the defendants with coverage for the claims in the underlying
action.[10]

Based on the foregoing, the court concludes that Maryland
Casualty's motion for summary judgment should be granted.  There
is no genuine issue of material fact with respect to whether the
underlying complaints state any claim that is within or arguably
within the scope of the coverage provided by Maryland Casualty's

_____

support a finding of "personal or advertising injury."

[10]    The court should note Maryland Casualty's further
argument that the only insured with respect to the underlying
actions is Lab Discount Drug, the sole named insured.  The insurer
notes that the policy extends coverage to the named insured's
"executive officers" and directors, "but only with respect to
their duties as [the named insured's] officers or directors."  The
named insured's employees are covered, "but only for acts within
the scope of their employment by you or while performing duties
related to the conduct of your business."  Mr. Hutto's alleged
acts of sexual molestation were clearly outside his duties as an
officer or director, outside the scope of his employment, and
unrelated to the conduct of Lab Discount Drug' business.  See
American Mfrs. Mut. Ins. Co. v. Stallworth, 433 F. Supp. 2d 767,
769 (S.D. Miss. 2006) (concluding there was no basis for inferring
that employee was acting within scope of employment when
committing sexual assault).  It is not so clear, however, that the
other defendants would not qualify as insureds.  This is another
issue the court has determined that it need not resolve, for
whether or not they are insureds, the policy provides no coverage
to them for the claims in the underlying actions.

policy; they do not, and therefore, Maryland Casualty is entitled to summary judgment on its complaint for declaratory relief.

Accordingly it is ordered that Maryland Casualty's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 15th day of November, 2006.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

14